IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| ANLANDO McMILLIAN, *pro se*, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 13-00335-CB-N |
| ) | |
| PATRICK R. DONAHOE, ) | |
| Postmaster General ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

Dueling motions for summary judgment (Doc. 37 (filed by Defendant) and Doc. 39 (filed by Plaintiff)) have been referred to the undersigned United States Magistrate Judge, pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.2, for entry of a report and recommendation.[1] Both sides have filed responses and replies (*see* Docs. 42 and 43). And, for all the reasons explained herein, it is **RECOMMENDED** that Plaintiff's motion (Doc. 39) be **DENIED**, Defendant's motion (Doc. 37) be **GRANTED**, and Plaintiff's complaint be **DISMISSED with PREJUDICE**.

### I. Background Facts and Plaintiff's Claims

The parties' submissions establish the following facts as to the event that led

---

[1] Plaintiff moved for summary judgment at the outset of this litigation. (*See* Doc. 11.) Consideration of that motion was stayed, as explained in the Rule 16(b) scheduling order (*see* Doc. 27 at 1-2), and—in the briefing order as to Defendant's summary judgment motion (Doc. 38)—Plaintiff was granted leave to supplement his motion for summary judgment (*see id.* at 1-2). Plaintiff's "revised and supplement[ed] motion for summary judgment" (Doc. 39), which is now before the Court, was filed in response to that order, on February 25, 2014. As such, it is **RECOMMENDED** that the Court **DENY as MOOT** Plaintiff's original motion for summary judgment (Doc. 11).

Plaintiff to file his lawsuit:[2]

On July 21, 2012, Plaintiff, a letter carrier with the United States Postal Service (the "USPS" or "Postal Service"), was approached by Leander Harris, a manager with the USPS. At the time of the confrontation with Harris, Plaintiff was on his break and talking to a female friend at—and his Postal Service vehicle was parked in front of—the former Tiny Diny restaurant, on Halls Mill Road, in Mobile, Alabama. Plaintiff did not recognize Harris as he approached. According to Plaintiff, Harris, in front of the female friend, told Plaintiff to "pop your trunk," which Plaintiff took to have a sexual connotation.[3] Plaintiff asked Harris to identify himself, and Harris produced a badge showing that he was a Postal Service manager. The sum of Plaintiff's claims is that Harris[4] used a sexually charged

---

[2] The facts as stated herein are necessarily limited by the Court's task at hand. At summary judgment, "[t]he Court will not weigh the evidence or make findings of fact"; its "role is limited to deciding whether there is sufficient evidence upon which a reasonable juror could find for the nonmoving party." *MSC Mediterranean Shipping Co. SA, Geneva v. Metal Worldwide, Inc.*, 884 F. Supp. 2d 1269, 1273 (S.D. Fla. 2012) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Morrison v. Amway Corp.*, 323 F.3d 920, 924 (11th Cir. 2003)); *see also Cassady v. Walker*, No. CV 109–128, 2012 WL 899913, at *12 n.12 (S.D. Ga. Feb. 6, 2012) ("Of course, the Court's finding . . . is limited to the present summary judgment stage of these proceedings, in which the facts are viewed in the light most favorable to [the nonmovant]. This finding should not be construed as any ruling or commentary on whether [the nonmovant] will ultimately prevail on his [ ] claims."), *report and recommendation adopted*, 2012 WL 899200 (S.D. Ga. Mar 15, 2012).

[3] Plaintiff relates that the term is used to request oral sex, and that he and his female friend were familiar with the term being used in that regard at the time Harris uttered it. (*See* Doc. 7 at 2-3.) Plaintiff claims that the term appears in the title of two "x-rated movie[s he] borrowed from a friend" (*id.*), and further relates, in support of the sexual and/or embarrassing connotation of the encounter, that Harris also giggled, looked back and forth between Plaintiff and his friend, and snapped his fingers repeatedly (*see* Doc. 39 at 2).

[4] Plaintiff originally named Harris as the sole defendant. At the request of the Assistant United States Attorney (*see* Doc. 4 at 3), an amended complaint (Doc. 7) was filed,

2

term to harass Plaintiff; embarrass Plaintiff in front of his female friend; and retaliate against Plaintiff for representing fellow USPS employees pursue sexual (and other) harassment complaints against Harris. (*See, e.g.,* Doc. 40 (affidavit filed by Plaintiff in support of summary judgment); Doc. 7, operative compl., at 2-5.)

## II. Law and Analysis

### A. Title VII is Plaintiff's exclusive remedy

Plaintiff's claims are before the Court on his amended complaint (Doc. 7), filed September 23, 2013. (*See* Doc. 27, ¶ 5.) Liberally construed, that complaint states a claim for sexual harassment and one for retaliation.[5] Plaintiff filed his complaint in this Court following issuance of an order by the EEOC's Office of Federal Operations, affirming the dismissal of his complaint of unlawful discrimination in violation of Title VII. (*See* Doc. 7 at 15-19.) Although Plaintiff fails to reference Title VII in the operative complaint (or any law for that matter), because Plaintiff is an employee of the Postal Service, his claims for sexual harassment and retaliation

---

to name the Postmaster General as the sole defendant. *See, e.g., Roland v. Potter*, 366 F. Supp. 2d 1233, 1235 (S.D. Ga. 2005) ("Title VII prevents co-workers and supervisors of federal employees from being subject to suit. Instead, the head of the federal agency involved is the proper defendant." (citing 42 U.S.C. § 2000e-16(c); *Canino v. U.S. Equal Emp't Opportunity Comm'n*, 707 F.2d 468, 472 (11th Cir. 1983))); *see also id.* (further noting "supervisors are not liable in their individual capacities for Title VII violations" (citing *Garcia-Cabrera v. Cohen*, 81 F. Supp. 2d 1272, 1278 (M.D. Ala. 2000))).

[5] While Plaintiff is a *pro se* litigant, and as such, his "pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed[,]" *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998) (per curiam), such "leniency does not give a court license to serve as *de facto* counsel for a party, or to rewrite an otherwise deficient pleading in order to sustain an action[,]" *GJR Invs., Inc. v. County of Escambia, Fla.*, 132 F.3d 1359, 1369 (11th Cir. 1998), *overruled on other grounds by Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009) (citations omitted).

3

must be considered pursuant to Title VII and the myriad case law interpreting it. *See McCloud v. Potter*, 506 F. Supp. 2d 1031, 1046 (S.D. Ala. 2007) ("It is now well settled, Title VII is the 'exclusive, pre-emptive administrative and judicial scheme for the redress of federal employment discrimination.'" (quoting *Newbold v. U.S. Postal Serv.*, 614 F.2d 46, 47 (5th Cir. 1980) (in turn quoting *Brown v. General Servs. Admin.*, 425 U.S. 820, 829 (1976)))); *accord Carter v. Secretary of Navy*, 492 Fed. App'x 50, 53 (11th Cir. Oct. 11, 2012) (per curiam); *Mays v. U.S. Postal Serv.*, 122 F.3d 43, 45 n.2 (11th Cir. 1997).[6]

Title VII makes it unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). And "under the anti-retaliation clause of Title VII, it is an unlawful employment practice for an employer to, *inter alia*, discriminate against an employee '(1) because she has opposed any practice made an unlawful employment practice by this subchapter, or (2) because she has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.'" *Anderson v. Dunbar Armored, Inc.*,

---

[6] *See also Jacox v. Department of Defense*, Civil Action No. 5:06-cv-182 (HL), 2007 WL 1412647, at *2 (M.D. Ga. May 10, 2007) ("Since [*Brown*], various federal courts have held that Title VII's preemptive effect will not allow state law employment discrimination claims to stand. Although the Eleventh Circuit has not addressed the issue of Title VII's preemptive reach over state law claims, [at least the Middle District of Georgia] has adopted the conclusion of the Fifth and Eighth Circuits" that such claims are preempted by Title VII (citing cases, including *Mathis v. Henderson*, 243 F.3d 446, 450-51 (8th Cir. 2001); *Pfau v. Reed*, 125 F.3d 927, 932-33 (5th Cir. 1997), *vacated and remanded on other grounds*, 525 U.S. 801 (1998), *pertinent holding reinstated*, 167 F.3d 228, 229 (5th Cir. 1999))).

4

678 F. Supp. 2d 1280, 1321 (N.D. Ga. 2009) (quoting 42 U.S.C. § 2000e-3(a)).[7] "The entire thrust of Title VII is directed against *discrimination*—disparate treatment on the basis of race or sex that intentionally or arbitrarily affects an individual." *Arizona Governing Comm. for Tax Deferral Annuity & Deferred Comp. Plans v. Norris*, 463 U.S. 1073, 1104 (1983) (Powell, J., concurring and dissenting) (emphasis in original).

### B. Summary Judgment Standard

It is well-established that, pursuant to Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). And this "rule is to be applied in employment discrimination cases as in any other case." *Archie v. Home-Towne Suites, LLC*, 749 F. Supp. 2d 1308, 1312 (M.D. Ala. 2010) (citing *Chapman v. A1 Transp.*, 229 F.3d 1012, 1026 (11th Cir. 2000) (en banc)). "No thumb is to be placed on either side of the scale." *Champman*, 229 F.2d at 1026. That is, just because "questions of fact in job

---

[7] As the language of § 2000e-3(a) makes clear, "Title VII prohibits employers from discriminating against employees who have engaged in two distinct forms of protected activity, to-wit: (i) opposing any practice made unlawful by Title VII (the 'Opposition Clause'), or (ii) making a charge, testifying, assisting or participating in a Title VII proceeding or investigation (the 'Participation Clause')." *Roberson v. BancorpSouth Bank, Inc.*, Civil Action No. 12–0669–WS–N, 2013 WL 6254108, at *10 (S.D. Ala. Dec. 4, 2013) (citing *Bourne v. School Bd. of Broward Cnty.*, 508 Fed. App'x 907, 910 (11th Cir. Feb. 1, 2013) (per curiam); *Booth v. Pasco Cnty., Fla.*, 829 F. Supp. 2d 1180, 1199 (M.D. Fla. 2011)).

discrimination cases are both sensitive and difficult and there will seldom be eyewitness' testimony as to the employer's mental processes" does not mean "that trial courts or reviewing courts should treat discrimination differently from other ultimate questions of fact." *Id.* (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 524 (1993)) (internal quotation marks and some punctuation omitted); *accord Hill v. Guyoungtech USA, Inc.*, Civil Action No. 07-0750-KD-M, 2008 WL 4073638, at *5 (S.D. Ala. Aug. 26, 2008); *Leatherwood v. Mobile Hous. Bd.*, Civil Action No. 09-00410-CB-N, 2010 WL 3039598, at *2 (S.D. Ala. Aug. 4, 2010).

> The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing, or pointing out to, the district court that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-24.
>
> Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324. To avoid summary judgment, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). On the other hand, the evidence of the nonmovant must be believed and all justifiable inferences must be drawn in its favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c).

*Archie*, 749 F. Supp. 2d at 1312 (some internal citations modified and footnote

added).

## C. Sexual Harassment Claim (*Prima Facie* Case)

For at least two reasons, Plaintiff has failed to establish a *prime facie* case of sexual harassment—that is, Plaintiff has failed to present evidence in support of at least two elements of his case on which he bears the ultimate burden of proof. Therefore, Plaintiff's claim for sexual harassment fails as a matter of law, and Defendant is entitled to summary judgment in his favor on this claim. *See Celotex*, 477 U.S. at 322-24; *cf. Butler v. Greif Bros. Serv. Corp.*, 231 Fed. App'x 854, 858 (11th Cir. Apr. 30, 2007) (per curiam) (affirming summary judgment in favor of the defendant "as a matter of law" "[b]ecause [plaintiff] failed to establish a *prima facie* element of his case . . .").

### 1. Law

As stated above, "Title VII makes it unlawful for an employer 'to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.'" *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1258 (11th Cir. 1999) (*en banc*) (quoting § 2000e-2(a)(1)). Sexual harassment—which exists in two recognized forms, "quid pro quo harassment and hostile work environment harassment"—"is a form of sex discrimination within the meaning of Title VII." *Id.* (citations omitted).

> To establish a *prima facie case* [of sexual harassment], a plaintiff must show: (1) that []he belongs to a protected group; (2) that []he has been subject to unwelcome sexual harassment; (3) that the harassment was

7

> based on h[is] sex; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment; and (5) that there is a basis for holding the employer liable.

*Pipkins v. City of Temple Terrace, Fla.*, 267 F.3d 1197, 1199-1200 (11th Cir. 2001) (citing *Johnson v. Booker T. Washington Broad. Serv., Inc.*, 234 F.3d 501, 508 (11th Cir. 2000) (applying test established by *Mendoza*, 195 F.3d at 1245 (11th Cir. 1999))).[8]

---

8  As the Eleventh Circuit recognized in *Johnson*, "[t]he Supreme Court in [*Burlington Indus., Inc., v. Ellerth*, 524 U.S. 742 (1998),] largely wiped out the usefulness of the terms 'hostile environment' and 'quid pro quo.'" 234 F.3d at 508 n.7; *see also Faragher v. City of Boca Raton*, 524 U.S. 775 (1998). Thus, "the same analysis applies whether the [sexual harassment] claim is framed as quid pro quo or hostile environment." *Hebert v. R & L Foods, LLC*, No. 2:12–cv–2782–TMP, 2014 WL 1338385, at *5 n.5 (N.D. Ala. Mar. 28, 2014) (citing *Johnson*, 234 F.3d at 508 n.7 ("Seeing no important distinction between a *prima facie case* under quid pro quo as opposed to hostile environment claims, we will apply the *Mendoza* factors to Johnson's claims, irrespective of the terms 'quid pro quo' and 'hostile environment.'")); *but see Austin v. Mac-Lean Fogg Co.*, --- F. Supp. 2d ----, 2014 WL 769451, at *4 & n.7 (N.D. Ala. Feb. 25, 2014) (noting "a crucial difference regarding the application of the [final two] *Mendoza* factor[s]" occurs when "a plaintiff alleges liability for sexual harassment based on a tangible employment action theory"; if a plaintiff presses such a theory, "whether she satisfies the fourth and fifth *Mendoza* factor collapses into one inquiry: whether there is a basis for holding the employer liable because a supervisor took tangible employment action against the plaintiff for failing to comply with the supervisor's sexual demands. [Thus, w]hether the supervisor's alleged harassment was of a frequency, degree, and nature that would qualify as 'severe and pervasive' . . . is irrelevant." (citations and footnotes omitted)); *compare id.*, *with Johnson*, 234 F.3d at 508 n.7 ("The fourth *Mendoza* factor, whether or not the harassment was severe or pervasive, jibes with the [quid pro quo] analysis as well: if a supervisor retaliates against a worker for failing to give in to sexual advances, those advances will rise to the level of 'severe or pervasive.'" (discussing the fourth factor from *Virgo v. Riviera Beach Assocs., Ltd.*, 30 F.3d 1350, 1361 (11th Cir. 1994) (whether "the employee's reaction to the unwelcome behavior affected tangible aspects of the employee's compensation, or terms, conditions or privileges of employment"))); *cf. Thompson v. Naphcare, Inc.*, 117 Fed. App'x 317, 321-22 (5th Cir. Nov. 11, 2004) (per curiam) ("This distinction makes a difference. An employer held vicariously liable for quid pro quo harassment on a finding that it took a tangible employment action toward an employee who either accepted or rejected a supervisor's sexual harassment is conclusively presumed to have had notice of the offending supervisor's conduct and will not be permitted to advance the affirmative defense enunciated by the Supreme Court in *Burlington Industries, Inc. v. Ellerth* and *Faragher v. City of Boca Raton*. In contrast, an employer that is found not to have taken a tangible employment action toward the harassed employee

8

**2. Analysis**

Viewing the facts in the light most favorable to Plaintiff, which the Court must do as to the Defendant's motion for summary judgment, Plaintiff has failed to establish a *prima facie* case of sexual harassment for at least two reasons. One, he has not shown that the harassment by Harris was "based on" Plaintiff's sex. And, two, Plaintiff has not shown that the harassment by Harris—the incident at the former Tiny Diny on July 21, 2012—"was sufficiently severe or pervasive to alter the terms and conditions of [Plaintiff's] employment." *Pipkins*, 267 F.3d at 1199.

Very simply, "[t]o prevail on a hostile work-environment gender-discrimination claim under Title VII[,[9]] a plaintiff 'must ***always*** prove that

---

but is found to have maintained a hostile work environment by virtue of severe or pervasive supervisor sexual harassment may nevertheless advance the *Ellerth/Faragher* affirmative defense." (footnote and citations omitted)).

[9]   There is no allegation, much less evidence to show, Plaintiff suffered a tangible employment action as a result of any harassment by Leander Harris. As Defendant notes in his motion for summary judgment, and as confirmed by the undersigned's review of the record, "Plaintiff does not allege any change in his salary or work duties. He does not allege that he was fired or suspended, or even transferred. Plaintiff[, moreover,] testified that no disciplinary action had been taken against him since the year before the incident in question, and that action was merely a letter of warning concerning 'unauthorized overtime or something, being injured[,]'" which "was reduced to 'an official discussion.'" (Doc. 37 at 10 (quoting from Plaintiff's deposition, and further noting, with citation to Plaintiff's deposition, that the last time Plaintiff received discipline resulting in the loss of pay was 2002 and that "[n]o other disciplinary action [has been] taken against [Plaintiff] in the last five years").)

Plaintiff did testify, however, that, on July 21, 2012, Harris "came up on him" with the intent to file a disciplinary action. But such disciplinary complaint was never filed. Accordingly, Harris's "unfulfilled threat[ does] not constitute [a] tangible employment action[]." *Allen v. Ohio Dep't of Job & Family Servs.*, No. 2:05-CV-00707, 2007 WL 2815569, at *8 (S.D. Ohio Sept. 25, 2007) (citing *Ellerth*, 524 U.S. at 754); *cf. Pennington v. City of Huntsville*, 261 F.3d 1262, 1267 (11th Cir. 2001) (A "decision to reprimand or transfer an employee, if rescinded before the employee suffers a tangible harm, is not an adverse employment action." (citations omitted)).

the conduct at issue was not merely tinged with offensive sexual connotations, but actually constituted discrimination **because of** sex.'" *Richardson v. Bay Dist. Schs.*, --- Fed. App'x ----, 2014 WL 1228372, at *1 (11th Cir. Mar. 26, 2014) (quoting *Oncale v. Sundowner Offshore Servs.*, 523 U.S. 75, 81 (1998)) (emphasis added). Plaintiff has offered no proof that Harris harassed Plaintiff on July 21, 2012 because Plaintiff is a male.[10]

As to the severity and/or pervasiveness of the harassment by Harris, Plaintiff "must show" such "harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment." *Mulkey v. Board of Comm'rs of Gordon Cnty.*, 488 Fed. App'x 384, 389 (11th Cir. Aug. 27, 2012) (per curiam) (citing *Mendoza*, 195 F.3d at 1245). Where sexual harassment is based solely on a theory of hostile work

---

[10] *Oncale*, like this case, concerned same-sex harassment. There, the Supreme Court

> recognized three scenarios in which a plaintiff could demonstrate that same-sex harassment was based on sex: (1) when there is "credible evidence that the harasser was homosexual"; (2) when a "victim is harassed in such sex-specific and derogatory terms by a [member of the same gender] as to make it clear that the harasser is motivated by general hostility to the presence of [a member of the same-sex gender] in the workplace"; and (3) where there is "direct comparative evidence about how the alleged harasser treated members of both sexes in a mixed-sex workplace." "Whatever evidentiary route the plaintiff chooses to follow, he . . . ***must always prove that the conduct at issue was not merely tinged with offensive sexual connotations, but actually constituted 'discrimina[tion] . . . because of . . . sex***.'"

*Ridley v. Sears Home Improvement Prods., Inc.*, No. 6:08–cv–749–Orl–28GJK, 2009 WL 4349322, at *8 (M.D. Fla. Nov. 25, 2009) (quoting *Oncale*, 523 U.S. at 80-81, and concluding that, "[b]ecause Ridley has not presented any evidence to support a finding of any of these three alternatives, he cannot establish this element and his claim for sexual harassment fails as a matter of law. (footnote omitted)) (emphasis added).

10

environment—*i.e.,* like here, there is no tangible employment action alleged—a plaintiff's failure to carry his burden as to this required element for sexual harassment is fatal to establishing a *prima facie* case. *See Miller v. Lectra USA, Inc.*, 145 Fed. App'x 315, 317 (11th Cir. Aug. 10, 2005) (per curiam) ("We are bound by our precedent in *Mendoza*. Because Miller did not present evidence that the complained-of conduct was sufficiently severe or persuasive to alter the terms or conditions of her employment, Miller failed to show a *prima facie* case of hostile work environment sexual harassment." (citation omitted)).

> Harassment is severe or pervasive for Title VII purposes only if it is both subjectively and objectively severe and pervasive. Harassment is subjectively severe and pervasive if the complaining employee perceives the harassment as severe and pervasive, and harassment is objectively severe and pervasive if a reasonable person in the plaintiff's position would adjudge the harassment severe and pervasive. When determining whether harassment is objectively severe and pervasive, courts consider the frequency of the conduct, the severity of the conduct, whether the conduct is physically threatening or humiliating, or a mere offensive utterance, and whether the conduct unreasonably interferes with the employee's job performance.

*Henderson v. Waffle House, Inc.*, 238 Fed. App'x 499, 501 (11th Cir. June 28, 2007) (per curiam) (quoting *Johnson*, 234 F.3d at 509). In determining the severity and/or pervasiveness of harassment, courts "look to the totality of the circumstances." *Id.* (citing *Mendoza*, 195 F.3d at 1246). "[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Id.* (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)) (internal quotation marks omitted).

11

Taking the facts in the light most favorable to Plaintiff, the alleged harassment is limited to an "isolated incident"—the encounter on July 21, 2012. As such, it must be determined whether that incident could be considered "extremely serious." While Plaintiff perceived Harris's request to "pop your trunk" as sexual, and may have been embarrassed in front of his female friend, the undersigned finds Harris's actions on July 21, 2012—telling Plaintiff to "pop your trunk" while giggling, looking back and forth at Plaintiff and his female friend, and snapping his fingers repeatedly—not to be "sufficiently severe or pervasive ***to alter*** the terms and conditions of employment ***and create*** a discriminatorily abusive working environment." *Mulkey*, 488 Fed. App'x at 389 (emphasis added).

The determination that the isolated incident was not sufficiently serious is guided by the context in which "pop your trunk" was uttered. That is, "[c]ontext matters." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 69 (2006); *see also Reeves v. C.H. Robinson Worldwide, Inc.*, 594 F.3d 798, 803 (11th Cir. 2010) (*en banc*) ("[F]ull consideration is essential to measure whether [vulgar] words and [associated] conduct could be read as having created 'an environment that a reasonable person would find hostile or abusive.'" (quoting *Oncale*, 523 U.S. at 81)); *compare id.* at 807 (One "core principle[] of employment discrimination law" is that "workplace conduct cannot be viewed in isolation, but rather is to be viewed cumulatively, and in its social context[.]"), *with Oncale*, 523 U.S. at 81-82 ("[T]he real social impact of workplace behavior often depends on a constellation of surrounding circumstances, expectations, and relationships which are not fully captured by a

simple recitation of the words used or the physical acts performed."). As such, to determine the seriousness of the incident on July 21, 2012, this Court should "proceed with common sense, and an appropriate sensitivity to social context, to distinguish between general [ ] vulgarity" and conduct that "a reasonable person" in Plaintiff's "position would find severely hostile or abusive." *Reeves*, 594 F.3d at 811 (quoting *Oncale*, 523 U.S. at 82 (internal quotation marks omitted)).

Common sense and context may militate in favor of an alternative interpretation for the phrase "pop your trunk," at least for a reasonable person in Plaintiff's position. Objectively speaking, "pop your trunk" could have meant just that: open the trunk (back door) of your parked Postal Service vehicle, to allow me to examine what mail your have/have left to deliver. However, even if "pop your trunk" was meant to be sexual in context, and moreover meant to embarrass Plaintiff, the undersigned does not find the incident on July 21, 2012 to be severely hostile or abusive to constitute that element of a *prima facie* case for hostile work environment sexual harassment. *Cf. Breda v. Wolf Camera, Inc.*, 148 F. Supp. 2d 1371, 1376 (S.D. Ga. 2001) ("[N]ot only must . . . (in some cases) mere spasms of offensive behavior be judicially dissected and quantified, but also the "surrounding circumstances" in which they occurred. Often this compels judges to painstakingly recite and analyze the "real" meaning of every last passing glance, raised eyebrow, comment, ***double entendre***, grunt, sniff, etc. . . . ." (citations omitted and emphasis added)). Regardless of Harris's true intent, his behavior was neither sufficiently severe nor pervasive as to alter the terms and conditions of Plaintiff's employment

13

nor create a discriminatorily abusive working environment. *See, e.g., Bartlett v. W.T. Harvey Lumber Co.*, 398 F. Supp. 2d 1311, 1318 (M.D. Ga. 2005) ("[I]t is clear that the alleged harassment—two inappropriate comments during two telephone conversations—was not severe or pervasive enough to create an objectively hostile or abusive work environment for purposes of making out a *prima facie* case under Title VII.").

### D. Retaliation Claim (*Prima Facie* Case)

To the extent Plaintiff also states a claim for retaliation under Title VII,[11] he has also failed to establish a *prima facie* case as to such a claim. Therefore, any claim for retaliation fails as a matter of law, and Defendant is entitled to summary judgment in his favor. *See Celotex*, 477 U.S. at 322-24; *cf. Butler*, 231 Fed. App'x at 858; *see also Rowell v. Winn Dixie*, Civil Action No. 07–0433–WS–M, 2008 WL 4369003, at *14 (S.D. Ala. Sept. 23, 2008) ("As such, plaintiff has not established the requisite elements of a *prima facie* case of retaliation, and her Title VII and § 1981 retaliation claims fail, as a matter of law." (footnote omitted)).

It is a plaintiff's "burden [to] establish[] a *prima facie* case of retaliation." *Faircloth v. Herkel Invs. Inc.*, 514 Fed. App'x 848, 852 (11th Cir. Mar. 25, 2013) (per curiam) (citing *Pennington v. City of Huntsville*, 261 F.3d 1262, 1266 (11th Cir. 2001)). To do so, "he [must] show '(1) that he engaged in statutorily protected

---

[11] The affidavit Plaintiff filed in support of his motion for summary judgment (Doc. 40) states that Harris "sexually harassed Plaintiff Anlando McMillan for ***retaliation*** purposes because Plaintiff [ ] represented an employee name[d] Lori Barton . . . in [her] harassment complaints against Defendant." (*Id.* (alteration to original and emphasis added).)

14

activity; (2) he suffered a materially adverse action; and (3) there was a causal connection between the protected activity and the [materially] adverse action.'" *Id.* (quoting *Howard v. Walgreen Co.*, 605 F.3d 1239, 1244 (11th Cir. 2010)); *accord Gowski v. Peake*, 682 F.3d 1299, 1311 (11th Cir. 2012); *Roberson v. BancorpSouth Bank, Inc.*, Civil Action No. 12–0669–WS–N, 2013 WL 6254108, at *10 (S.D. Ala. Dec. 4, 2013). Here, Plaintiff has at the very least failed to establish that he suffered a materially adverse action.

"For an action of an employer to be considered 'materially adverse' and intended as retaliation, the employee must prove that the action would 'dissuade a reasonable worker from making or supporting a charge of discrimination.'" *Rademakers v. Scott*, 350 Fed. App'x 408, 412-13 (11th Cir. Oct. 28, 2009) (per curiam) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)); *see also Menefee v. Montgomery Cnty. Bd. of Educ.*, 137 Fed. App'x 232, 234 (11th Cir. June 21, 2005) (per curiam) ("To establish an adverse employment action, 'an employee must show a **serious and material** change in the terms, conditions, or privileges of employment ... [,]as viewed by a reasonable person in the circumstances.'" (quoting *Davis v. Town of Lake Park, Fla.*, 245 F.3d 1232, 1239 (11th Cir. 2001) (emphasis added by *Davis*))).

At most, Plaintiff merely contends Harris's alleged sexual harassment of him in the parking lot of the former Tiny Diny was Harris's means to retaliate against Plaintiff for his representation of (at least) one fellow employee in the prosecution of harassment claims against Harris. (*See* Doc. 40.) Giving Plaintiff the benefit of

the doubt, the undersigned construes this as a retaliatory hostile work environment claim, which the Eleventh Circuit first recognized as a cause of action in *Gowaski*, 682 F.3d at 1311-12 ("We now join our sister circuits and recognize the cause of action. Doing so is consistent with the statutory text, congressional intent, and the EEOC's own interpretation of the statute." (discussing *Noviello v. City of Boston*, 398 F.3d 76, 89-90 (1st Cir. 2005))).

While "subjecting an employee to a hostile work environment in retaliation for protected activity constitutes an adverse employment action[,] . . . a string of trivial annoyances will not suffice to make an adverse action showing: the alleged harassment **must be severe or pervasive**[.]" *E.g., Rolfs v. Home Depot U.S.A., Inc.*, 971 F. Supp. 2d 197, 222 (D.N.H. 2013) (quoting *Alvarado v. Donahoe*, 687 F.3d 453, 458-61 (1st Cir. 2012)) (emphasis added); *see also Gomez-Perez v. Potter*, 452 Fed. App'x 3, 5 (1st Cir. Dec. 22, 2011) ("[N]one of the individual interactions between Gómez and other USPS employees on their own amount to materially adverse employment actions. Federal laws banning retaliation do not set forth a general civility code for the American workplace, and an employee may not base a valid retaliation claim on petty slights or minor annoyances that often take place at work and that all employees experience. [Co-worker]'s harassing comments fall within this category, as the workplace is not a cocoon, and those who labor in it are expected to have reasonably thick skins." (citations omitted and alteration to original)). Even assuming (but not deciding) that (1) Plaintiff's representation of others against Harris was statutorily protected; and (2) there is a causal connection

16

between that activity and the alleged harassment on July 21, 2012, Plaintiff has not shown—for the same reasons explained above—that the harassment in the former Tiny Diny parking lot was either severe or pervasive. Thus, to the extent such a claim is made, Plaintiff has failed to establish a *prima facie* case for retaliatory hostile work environment.

### E. Plaintiff's Motion for Summary Judgment (Doc. 39)

Because Plaintiff has failed to establish a *prima facie* case as to either cause asserted in his complaint, necessitating summary judgment for Defendant, it is also recommended that Plaintiff's own motion for summary judgment be denied. *Cf. La Framboise Well Drilling, Inc. v. R.J. Dooley & Assocs., Inc.*, No. 05Civ.956 (SHS)(MHD), 2007 WL 430285, at *4 (S.D.N.Y. Feb. 7, 2007) ("[P]laintiff has failed to establish its *prima facie* case, and[, as such, its motion for] summary judgment is denied . . . .").

### III. Conclusion

For all the reasons explained above, it is **RECOMMENDED** that Plaintiff's motion (Doc. 39) be **DENIED**, Defendant's motion (Doc. 37) be **GRANTED**, and Plaintiff's complaint be **DISMISSED with PREJUDICE**. It is further **RECOMMENDED** that the Court **DENY as MOOT** Plaintiff's original motion for summary judgment (Doc. 11).

Further, based on the undersigned's recommendation that Plaintiff's complaint be dismissed, it is **ORDERED** that all pretrial deadlines in this matter are **STAYED** pending the District Judge's consideration of the report and

recommendation and any objections thereto. Specifically, the deadline for Defendant to file pretrial disclosures, July 30, 2014 (*see* Doc. 46), is **VACATED**, and the final pretrial conference, now set for August 4, 2014 (*see* Doc. 27, ¶ 1), is **CANCELED**.

## IV. Notice of Right to File Objections

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b); S.D. ALA. L.R. 72.4. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this the 28th day of July, 2014.

                           */s/ Katherine P. Nelson*
                           **KATHERINE P. NELSON**
                           **UNITED STATES MAGISTRATE JUDGE**